**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AIKEN REGIONAL MEDICAL CENTERS, LLC, dba Aiken Regional Medical Center 302 University Parkway Aiken, SC  29801, <br><br> AUBURN REGIONAL MEDICAL CENTER, INC., dba Auburn Regional Medical Center 202 North Division Street, Plaza One Auburn, WA  98002, <br><br> THE BRIDGEWAY, LLC, dba The Bridgeway 21 Bridgeway Road North Little Rock, AR 72113, <br><br> CENTRAL MONTGOMERY MEDICAL CENTER, L.L.C., dba Central Montgomery Medical Center 100 Medical Campus Drive Lansdale, PA  19446, <br><br> DISTRICT HOSPITAL PARTNERS, LP, dba The George Washington University Hospital 900 23rd Street NW Washington, DC  20037, <br><br> FOREST VIEW PSYCHIATRIC HOSPITAL, INC., dba Forest View Hospital 1055 Medical Park Drive, SE, Grant Rapids, MI 49546, <br><br> FORT DUNCAN REGIONAL MEDICAL CENTER, L.P. dba Fort Duncan Regional Medical Center 3333 N. Foster Maldonado Boulevard Eagle Pass, TX 78852, <br><br> HRI HOSPITAL, INC., dba HRI Hospital, aka Human Resource Institute 227 Babcock Street Brookline, MA 02446, | Case No. _____ |

KEYSTONE WSNC LLC, dba Old Vineyard
Behavioral Health Services
3637 Old Vineyard Road
Winston-Salem, NC 27104,

LANCASTER HOSPITAL CORPORATION,
dba Palmdale Regional Medical Center,
aka Lancaster Hospital
38600 Medical Center Drive
Palmdale, CA  93551,

LAREDO REGIONAL MEDICAL CENTER,
LP, dba Doctor's Hospital of Laredo
10700 McPherson Road
Laredo, TX  78045,

MANATEE MEMORIAL HOSPITAL, L.P.,
dba Lakewood Ranch Medical Center
8330 Lakewood Ranch Blvd.
Lakewood Ranch, FL 34202,

MANATEE MEMORIAL HOSPITAL, L.P.,
dba Manatee Memorial Hospital
206 Second Street East
Bradenton, FL  34208,

MCALLEN HOSPITALS, L.P., dba Edinburg
Regional Medical Center
1102 W. Trenton Road
Edinburg, TX  78539,

MCALLEN HOSPITALS, L.P.,dba South
Texas Health System
1102 W. Trenton Road
Edinburg, TX  78539,

MCALLEN HOSPITALS, L.P., dba McAllen
Heart Hospital,
aka McAllen Medical Heart Hospital
301 W. Expressway 83
McAllen, TX  78503,

NORTHWEST TEXAS HEALTHCARE
SYSTEM, INC., dba Northwest Texas
Healthcare System

1501 S. Coulter Street
Amarillo, TX  79106,

SPARKS FAMILY HOSPITAL, INC., dba
Northern Nevada Medical Center
2375 E. Prater Way
Sparks, NV  89434,

SUMMERLIN HOSPITAL MEDICAL
CENTER, LLC, dba Summerlin Hospital
Medical Center
657 N. Town Center Drive
Las Vegas, NV  89144,

THE PAVILION FOUNDATION, dba The
Pavilion Behavioral Health System
809 W. Church Street
Champaign, IL 61820,

TURNING POINT CARE CENTER, LLC,
dba Turning Point Hospital
3015 Veterans Parkway
Moultrie, GA 31788,

TWO RIVERS PSYCHIATRIC HOSPITAL,
INC., dba Two Rivers Behavioral Health
System
5121 Raytown Road
Kansas City, MO 64133,

UHS OF ANCHOR, L.P., dba Southern
Crescent Behavioral Health System
aka Anchor Hospital
Anchor Campus
5454 Yorktown Drive
Atlanta, GA 30349,

UHS OF DENVER, INC., dba Highlands
Behavioral Health System
8565 S. Polar Way
Littleton, CO 80130,

UHS OF DOVER, LLC, dba Dover
Behavioral Health System
725 Horsepond Road
Dover, DE 19901,

UHS OF FAIRMOUNT, INC., dba Fairmount
Behavioral Health System
561 Fairthorne Avenue
Philadelphia, PA 19128,

UHS OF FULLER, INC., dba Fuller Hospital
200 May Street
South Attleboro, MA 02703,

UHS OF GREENVILLE, LLC, dba Carolina
Center for Behavioral Health
2700 E. Phillips Road
Greer, SC 29650,

UHS OF HARTGROVE, INC., dba
Hartgrove Behavorial Health System
5730 West Roosevelt Road
Chicago, IL 60644,

UHS OF LAKESIDE, LLC, dba Lakeside
Behavioral Health System
29911 Brunswick Road
Memphis, TN 38133,

UHS OF NEW ORLEANS, INC., dba
Chalmette Medical Centers
9001 Patricia Street
Chalmette, LA  70043,

UHS OF OKLAHOMA, INC., dba St. Mary's
Regional Medical Center
305 South 5th Street
Enid, OK 73701,

UHS OF PEACHFORD, L.P., dba Peachford
Hospital
2151 Peachford Road
Atlanta, GA 30338,

UHS OF PENNSYLVANIA, INC., dba The
Horsham Clinic
722 E. Butler Pike
Ambler, PA 19002,

UHS OF PENNSYLVANIA, INC., dba
Roxbury Treatment Center
601 Roxbury Road, Box L
Shippensburg, PA 17257,

UHS OF RIDGE, LLC, dba Ridge Behavioral
Health System
3050 Rio Dosa Drive
Lexington, KY  40509,

UHS OF ROCKFORD, LLC., dba Rockford
Center
100 Rockford Drive
Newark, DE 19713,

UHS OF TEXOMA, INC., dba Texoma
Medical Center
5016 S. US Highway 75
Denison, TX  75020,

UHS OF WESTWOOD PEMBROKE, INC.,
dba Westwood Lodge Hospital
45 Clapboardtree Street
Westwood, MA  02090,

UHS-CORONA, INC., dba Corona Regional
Medical Center
800 S. Main Street
Corona, CA  92882,

UNIVERSAL HEALTH SERVICES OF
RANCHO SPRINGS, INC., dba Southwest
Healthcare System
25500 Medical Center Drive
Murrieta, CA  92562,

VALLEY HEALTH SYSTEM, LLC, dba
Valley Hospital Medical Center
620 Shadow Lane
Las Vegas, NV  89106,

VALLEY HEALTH SYSTEM, LLC, dba
Desert Springs Hospital
2075 E. Flamingo Road
Las Vegas, NV  89119,

VALLEY HEALTH SYSTEM, LLC, dba
Spring Valley Hospital Medical Center
5400 S. Rainbow Boulevard
Las Vegas, NV  89118,

VALLEY HEALTH SYSTEM, LLC, dba
Centennial Hills Hospital Medical Center
6900 N. Durango Drive
Las Vegas, NV  89149,

WELLINGTON REGIONAL MEDICAL
CENTER, LLC, dba Wellington Regional
Medical Center
10101 Forest Hill Boulevard
West Palm Beach, FL  33414,

                              Plaintiffs,


            v.


ALEX M. AZAR II, Secretary,
United States Department of Health and
Human Services
200 Independence Avenue, S.W.
Washington, D.C.  20201,

                              Defendant.

## COMPLAINT

The above-captioned Plaintiff-hospitals (collectively, "the Hospitals"), by and through their undersigned attorneys, bring this action against defendant Alex M. Azar II, in his official capacity as the Secretary ("the Secretary") of the Department of Health and Human Services ("HHS"), and state as follows:

## INTRODUCTION

1.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq*. ("the Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq*.  The Hospitals seek reversal of the Secretary's final decision (the "Final Decision," Exhibit A, hereto)) affirming the disallowance of the Hospitals' Medicare bad debts for Fiscal Years ("FYs") 2006 through 2009 on the ground that the bad debts cannot properly be claimed as uncollectible because they were still pending at an outside collection agency at the time the Hospitals wrote them off.  Reversal is warranted because (a) the Hospitals' bad debts are explicitly allowable under applicable law and (b) the Secretary's determination that the bad debts cannot be claimed as uncollectible on the ground that they were still pending at an outside collection agency was based on a policy that cannot be applied to the bad debts at issue because, as this Court has previously held in an action involving many of the same hospital-plaintiffs that are plaintiffs here, applying the policy would violate the Medicare Bad Debt Moratorium.

2.      In *District Hospital Partners v. Sebelius*, 932 F.Supp.2d 194 (D.D.C. 2013), this Court decided the same issue present in the instant action in favor of many of the Hospitals[1] for appeals related to their Medicare bad debts disallowed in prior fiscal years.  In *District Hospital*

---

[1] Twenty-five of the Hospitals in the instant action were also plaintiff-hospitals in *District Hospital Partners*.  However, all plaintiff-hospitals in both actions share a common ultimate corporate parent, Universal Health Services, Inc.

*Partners*, this Court examined the Secretary's policy prohibiting providers from obtaining reimbursement for Medicare bad debts while those debts remained at an outside collection agency (the "presumption of collectability") and found that the policy did not exist prior to August 1, 1987. As a result, this Court found that application of the Secretary's policy to the bad debts at issue violated the Medicare Bad Debt Moratorium,[2] which prohibited the Secretary from changing Medicare bad debt policies after that date until October 1, 2012 when the Bad Debt Moratorium was repealed. *See also Foothill Hosp. Morris L. Johnson Meml v. Leavitt*, 558 F.Supp.2d 1, 10-11 (D.D.C. 2008) ("*Foothill*") (the "blanket prohibition against reimbursement while collection efforts are ongoing constitutes a change in policy, for this policy did not exist prior to the effective date of the Moratorium"); *but see Lakeland Regional Health System v. Sebelius*, 958 F.Supp.2d 1 (D.D.C. 2013) (determining that the presumption of collectability predated the Bad Debt Moratorium); *Community Health Systems v, Burwell*, 113 F.Supp.3d 197 (D.D.C. 2015) (same). Importantly here, under the doctrine of *res judicata*[3] the Secretary is precluded from re-litigating the same issue against the same parties and, thus, cannot assert that the presumption of collectability existed prior to 1987.

      3.     The Hospitals, thus, seek an order from this Court (a) reversing the Final Decision, (b) remanding this action to the Secretary with instructions to reimburse the Hospitals in full for

---

[2] Reprinted at 42 U.S.C. § 1395f note entitled "Continuation of Bad Debt Recognition for Hospital Services."

[3] The doctrine of *res judicata* encompasses two distinct doctrines—claim preclusion and issue preclusion. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. __, 140 S. Ct. 1589, 1594—95 (2020). Relevant here is issue preclusion (also known as collateral estoppel), which precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment in that prior case. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n. 5 (1979).

the bad debts at issue, plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2), and (c) granting other relief.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §§1331 (federal question) and 1361 (mandamus).

5.     Venue lies in this judicial district under 42 U.S.C. §1395oo(f) and 28 U.S.C. §1391.

## PARTIES

6.     At all times relevant to this action, the Hospitals were qualified as Medicare-participating, hospital-providers under the federal Medicare program.  The Hospitals are set forth in schedules of providers attached to the Final Decision in Appendix A of Exhibit A (at 21-29), along with their unique Medicare provider numbers and each Hospitals' cost reporting periods at issue in this action, as set forth in their administrative appeals.[4]

7.     Defendant Alex M. Azar II is the Secretary of the Department of Health and Human Services, the federal department which contains the Centers for Medicare and Medicaid Services ("CMS").  The Secretary, the federal official responsible for administration of the Medicare program, has delegated the responsibility to administer that program to CMS.  Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA").  In this complaint, the Hospitals generally refer to the agency as CMS or the "agency" even for matters arising before June 14, 2001.

---

[4] McAllen Hospitals, LLC, dba South Texas Health System (Provider No. 45-0119) was formed in 2008 when McAllen Hospital, L.P., dba McAllen Heart Hospital (Provider No. 45-0811) and McAllen Hospital, L.P., dba Edinburg Regional Medical Center (Provider No. 45-0119) were combined.  *See* Exhibit A at 26-29.

## STATUTORY AND REGULATORY BACKGROUND

### A.    General Background of the Medicare Program

8.    The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  42 U.S.C. §1395c.  The Medicare program is federally funded and administered by the Secretary through CMS and its contractors.  42 U.S.C. §1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977).

9.    Based on delegated authority from the Secretary, CMS implements the Medicare program, in part, through the issuance of official Rulings.  *See* 42 C.F.R. §401.108.  In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes numerous other interpretative rules implementing the Medicare program, which are compiled in one or more CMS Manuals, including the Provider Reimbursement Manual ("PRM").  The Secretary also issues other subregulatory documents to implement the Medicare program, which generally do not have the force and effect of law.

10.    The Medicare Act, at 42 U.S.C. §1395hh(a), prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service unless it is promulgated by the Secretary by notice-and-comment rulemaking.  In addition, the Medicare Act specifies that where a final rule "is not a logical outgrowth of a previously published notice of proposed rulemaking . . ., such provision shall be treated as a proposed regulation and shall not take effect."  42 U.S.C. §1395hh(a)(4); *see also Allina Health Services v. Price*, 863 F.3d 937 (D.C. Cir. 2017), *aff'd*, 139 S. Ct. 1804, 1816 (2019).  Moreover, under 42 U.S.C. §1395hh(c)(1), the Secretary is required to "publish in the Federal Register, not less frequently than every 3 months, a list of all manual instructions, interpretative rules, statements of policy, and guidelines of general applicability."

11.     Medicare payment to providers of services is commonly carried out by contractors acting as agents of the Secretary pursuant to contracts with him.  These contractors, which are now called Medicare Appeals Contractors ("MACs"), were formerly called Medicare fiscal intermediaries.  Each Medicare-participating hospital is assigned to a MAC.  The lead MAC for the underlying PRRB appeals here was Novitas Solutions,[5] and prior to that the fiscal intermediary was Wisconsin Physicians Service (formerly Mutual of Omaha).

**B.     Medicare Bad Debt Payments and the Bad Debt Moratorium**

12.     The Medicare statute and regulations prohibit cost shifting.  *See* 42 U.S.C. §1395x(v)(1)(A)(stating that "the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs"); 42 C.F.R. §413.89(d) (formerly, §413.80(d)).  Generally, cost shifting occurs in the following two ways: (1) the necessary costs of delivering health care to Medicare enrollees are borne by individuals who are not Medicare recipients, or (2) the necessary costs of delivering health care to the hospital's other patients not covered by Medicare are borne by Medicare.  *See* 42 U.S.C. §1395x(v)(1)(A).

13.     When receiving inpatient and outpatient hospitals services, Medicare beneficiaries are responsible for paying coinsurance and deductible amounts.  42 U.S.C. §§1395e and 1395l. The failure of beneficiaries to pay the deductible and coinsurance amounts could result in the costs related to covered services being borne by individuals who are not Medicare beneficiaries. To assure that such covered service costs are not borne by others, the costs attributable to the

_____

[5] Novitas Solutions is the MAC for all Hospitals except Valley Health System, LLC, dba Centennial Hills Hospital Medical (Provider No. 20-0054), which has Noridian Healthcare Solutions as its MAC.  In this Complaint, the term "MAC" includes both of these entities.

deductible and coinsurance amounts that remain unpaid are reimbursed by Medicare as "bad debts."  42 C.F.R. §413.89(d).

14.     In order to qualify for reimbursement of Medicare bad debts,  providers must show that the unpaid deductible and coinsurance amounts meet the following criteria set forth in 42 C.F.R. §413.89(e)[6]:

> a.     The debt must be related to covered services and derived from deductible and coinsurance amounts;
>
> b.     The provider must be able to establish that reasonable collection efforts were made;
>
> c.     The debt was actually uncollectible when claimed as worthless; and
>
> d.     Sound business judgment established that there was no likelihood of recovery at any time in the future.

15.     The Medicare bad debt criteria are also interpreted in Chapter 3 of the Medicare Provider Reimbursement Manual ("PRM").  PRM §308 mirrors the regulation in outlining the four main criteria that must be satisfied in order for a bad debt to be reimbursable by Medicare.  In interpreting what constitutes a "reasonable collection effort," PRM §310 states that a provider's effort to collect unpaid balances from Medicare beneficiaries and non-Medicare patients must be similar.  Further, reasonable collection efforts include "the issuance of a bill on or shortly after discharge or death of the beneficiary." as well as "other actions such as subsequent billings, collection letters and telephone calls."  PRM §310.

---

[6] The Secretary adopted changes to section 413.89 in the Hospital IPPS for Acute Care Hospitals and the Long Term Care Hospital Prospective Payment System and Final Policy Changes and Fiscal Year 2021 Rates, 85 Fed. Reg. 58432 (Sept. 18, 2020) ("2021 IPPS Final Rule").

16.     Regarding the third criteria above ("collectability"), PRM §310.2 sets forth the "presumption of noncollectability," providing that "[i]f after reasonable and customary attempts to collect a bill, the debt remains unpaid more than 120 days from the date the first bill is mailed to the beneficiary, the debt may be deemed uncollectible."  PRM, §310.2.

17.     As a result of disputes arising because of inconsistent policies regarding bad debts being applied by MACs, Congress enacted the Bad Debt Moratorium which prohibited the Secretary from making any changes to the policies relating to bad debts that were in effect on August 1, 1987.  42 U.S.C. §1395f, note.  The Bad Debt Moratorium, never codified but found at 42 U.S.C. §1395f note, was originally enacted in 1987.  After various amendments, the Bad Debt Moratorium stated as follows from 1989 until 2012:

> CONTINUATION OF BAD DEBT RECOGNITION FOR HOSPITAL SERVICES.  – In making payments to hospitals under title XVIII of the Social Security Act, the Secretary of Health and Human Services shall not make any change in the policy in effect on August 1, 1987, with respect to payment under title XVIII of the Social Security Act to providers of service for reasonable costs relating to unrecovered costs associated with unpaid deductible and coinsurance amounts incurred under such title (including criteria for what constitutes a reasonable collection effort, including criteria for indigency determination procedures, for record keeping, and for determining whether to refer a claim to an external collection agency).
>
> The Secretary may not require a hospital to change its bad debt collection policy if a fiscal intermediary, in accordance with the rules in effect as of August 1, 1987, with respect to criteria for indigency determination procedures, record keeping, and determining whether to refer a claim to an external collection agency, has accepted such policy before that date, and the Secretary may not collect from the hospital on the basis of an expectation of a change in the hospital's collection policy.

*See* Pub. L. No. 100-203 §4008, 101 Stat. 1330, 1355 (1987); Pub. L. No. 100-647 §8402, 102 Stat. 3798 (1988); Pub. L. No. 101-239 §6023, 103 Stat. 2106, 2167 (1989).

18.     On February 27, 2012, President Obama signed the Middle Class Relief Act of 2012 into law.  Section 3201 of the Middle Class Relief Act of 2012 amended the Moratorium by adding at the end the following sentence: "Effective for cost reporting periods <u>beginning on or after October 1, 2012</u>, the provisions of the previous two sentences shall not apply."  Pub. L. No. 112-96, §3201(d), 126 Stat. 192 (2012) (emphasis added).  Thus, by its own terms, this termination provision does not apply to the cost periods at issue in this case because they all ended before October 1, 2012 and the amended language only applies to cost reporting periods after that date.

19.     During the relevant time period for the appeals at issue here, the regulations, as well as the various provisions in the PRM, did not specifically state that bad debts cannot meet the criteria for reimbursement when they are pending at an outside collection agency.

20.     The first time that the presumption of collectability appeared in writing was in 1989, which was <u>two years after the Bad Debt Moratorium was enacted</u>.  *See* Medicare Intermediary Manual ("MIM")13-4, §4198.  Importantly, the Secretary did not adopt a rule containing this requirement, consistent with the Medicare statute's requirement of notice and comment, until doing so in the 2021 IPPS Final Rule.

## C.     <u>The Medicare Appeal Process</u>

21.     At the close of its FY, a hospital must submit a Medicare "cost report" showing the costs incurred during the FY and other data used to determine the Medicare reimbursement due to the hospital for the FY.  The hospital's MAC is required to analyze and audit the cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the FY.

22.     If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as

reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR).  42 U.S.C. §1395oo.

23.     The decision of the PRRB constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision.  42 U.S.C. §1395oo(f)(1); 42 C.F.R. §§405.1875 and 405.1877.  The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator.  Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

24.     A provider may obtain judicial review of the Secretary's final administrative decision by filing suit within 60 days of receipt of the final decision in the United States District Court for the judicial district in which the provider is located or in the United States District Court for the District of Columbia.  42 U.S.C. §1395oo(f).  In any such action, the Secretary is the proper defendant.  *See* 42 C.F.R. §421.5(b).  Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of a provider that prevails in an action brought under 42 U.S.C. §1395oo(f).

25.     Judicial relief is also available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.  *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

**D.**     **Applicability of the APA to Medicare Appeals**

26.     Under 42 U.S.C. §1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA.  Under the APA, a "reviewing

court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §706(2)(A).  Furthermore, a "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…unsupported by substantial evidence."  5 U.S.C. §706(2)(E).

**E.**   <u>**Prior Appeals and Court Decision**</u>

27.   Twenty-five of the hospitals that are plaintiffs in this case previously appealed this exact issue, whether the presumption of collectability was in existence prior to August 1, 1987, but for prior cost report years.  In *District Hospital Partners*, this Court granted the hospitals' Motion for Summary Judgment, and denied the Secretary's Motion for Summary Judgment.  932 F.Supp.2d 194.  The Court found that the presumption of collectability did not exist prior to 1987, and therefore, the "application of that policy to disallow [the hospitals] claimed bad debts violates the first prong of the Bad Debt Moratorium prohibiting the Secretary from changing the agency's bad debt policies."  *Id.* at 199.  The Court, with detailed specificity, found that the evidence set forth by the Secretary did not support the CMS Administrator's findings.  *Id.* at 200-05.  In fact, the Court found that the evidence in the record contradicted the CMS Administrator's findings. *Id.* at 205-06.  As such, the court vacated the CMS Administrator's decision, and remanded the case to the Secretary.  *Id.* at 206.

28.   The Secretary did not appeal the district court's decision and paid the Hospitals, with interest.

## PROCEDURAL BACKGROUND

29.     When submitting their cost reports for FYs 2006 through 2009, the Hospitals sought reimbursement of their Medicare bad debts sent to outside collection agencies.  However, the Hospitals' MAC denied all reimbursement of these bad debts.

30.     The Hospitals filed timely appeals to the PRRB, in accordance with 42 U.S.C. §1395oo, for FYs 2006 through 2009.  The appeals were consolidated into a "Common Issue Related Party" group appeal known as "UHS 2006-2009 Medicare Bad Debts Still at Agency Group."  In a decision issued on August 31, 2020, the PRRB found that (i) the MAC properly disallowed the Hospitals' Medicare bad debts for FYs 2006 through 2009, because the bad debts remained at outside collection agencies, (ii) that the disallowances did not violate the Bad Debt Moratorium, and (iii) that the PRRB lacked authority to apply the doctrine of issue preclusion.

31.     In a letter dated September 16, 2020, the CMS Administrator advised the parties, consistent with 42 C.F.R. §405.1875, that she had decided to review the PRRB decision.  However, by letter dated November 4, 2020 (Exhibit B, hereto), the Hospitals were informed that the CMS Administrator subsequently declined to review the decision and that "[p]ursuant to 42 CFR 405.1877(b)(4), because the Administrator notified the parties that she would review the PRRB decision, the Administrator's subsequent decline allows the Provider an additional 60 days in which to file for judicial review, beginning with the date the Administrator's time expires for taking action under 405.1875."

32.     Pursuant to 42 C.F.R. §405.1877(b)(4), the CMS Administrator's "subsequent inaction [after providing notice that he would review] constitutes an affirmation of the Board's decision by the Administrator, for purposes of the time in which to seek judicial review."  This action is timely-filed under 42 U.S.C. §1395oo(f).

## FACTUAL BACKGROUND

33.     The MAC had a long term practice of allowing the Hospitals' Medicare bad debts claimed on their cost reports while the accounts were still pending at an outside collection agency. However, in 2006, the Hospital's MAC issued a new policy stating that it would no longer allow bad debts pending at an outside collection agency.  Thereafter, the MAC began disallowing bad debts pending at outside collection agencies in the Hospitals' NPRs, including, FYs 2006 through 2009.  The Hospitals appealed the disallowance of the FY 2006 through 2009 Medicare bad debts to the PRRB.  The amount at issue for FYs 2006 through 2009 for the Hospitals is approximately $1,359,216.

34.     For each of the FYs at issue, the Hospitals claimed their Medicare bad debts in accordance with the Secretary's requirements, as set forth in 42 C.F.R. §413.89(e) and elsewhere. Specifically, the Hospitals claimed amounts for unpaid Medicare patient deductibles and coinsurance as bad debt only after reasonable collection efforts were made, the account was determined uncollectible, sound business judgment established that there was no likelihood of recovery at any time in the future, and all efforts were documented.  After such reasonable collection efforts were made for at least 120 days, all such accounts were forwarded to outside collection agencies except where it was legally prohibited, when payment at a future date was probable, or when the outstanding balance is under a certain threshold amount.

35.     The factual stipulations entered into between the Hospitals and the MAC during the proceedings before the PRRB establish that, with regard to the bad debt claimed on each of the Hospitals' cost reports, the only issue in this action is whether the Hospitals' Medicare bad debts pending at outside collection agencies are allowable.  The stipulated facts further provide that the

Hospitals' Medicare bad debts were disallowed "solely because they were pending at an outside collection agency, purportedly pursuant to CMS policy on this issue."

36.     Before the PRRB, the Hospitals argued that:

a)      The Secretary's presumption of collectability policy violates the Bad Debt Moratorium because it was a change in bad debt policy after August 1, 1987, and

b)      the presumption of collectability policy is arbitrary and capricious because it (i) is inconsistent with the governing statute and regulations; (ii) contradicts prior settled CMS policy; and, (iii) was not properly promulgated, and

c)      this exact issue was previously decided in the Hospitals' favor in *District Hospital Partners* and, under the doctrine of issue preclusion, the MAC was prohibited from arguing that the presumption of collectability policy is not barred by the Bad Debt Moratorium with respect to the Hospitals.  *See* Exhibit A at 4-17.

37.     The PRRB found that the policy of not allowing providers to claim bad debts until they are returned from a collection agency is consistent with the regulations and manual sections in effect on August 1, 1987 and thus, found that the MAC's disallowance of the Hospitals' bad debts did not violate the Bad Debt Moratorium.  Exhibit A at 10.  Further, the PRRB declined to follow either *District Hospital Partners* or *Foothill Hospital*, stating that the Board disagreed with this Court's findings in both cases.  *Id.* at 13-15.  Finally, the PRRB found that the Secretary did not confer on the PRRB the authority to apply *res judicata* principles (including issue preclusion) and, thus, the PRRB did not determine whether issue preclusion applied to bar the disallowance of the Hospitals' Medicare bad debts.  *Id.* at 17-18.

### THE FINAL DECISION IS UNLAWFUL AND MUST BE REVERSED

38.     The Final Decision is unlawful and must be reversed because the Secretary's presumption of collectability policy did not exist prior to August 1, 1987 and is barred by the Bad Debt Moratorium.[7]  *Dist. Hosp. Partners*, 932 F. Supp. 2d at 206.  In particular, the presumption of collectability policy did not exist prior to its inclusion in the MIM in 1989.  The PRRB's decision that bad debts may not be deemed worthless and uncollectible under any circumstances as long as they remain at an outside collection agency is also inconsistent with the governing regulations, including 42 U.S.C. §413.89, and substantive manual provisions, including PRM-I, §§308, 310, 310.2, 314 and 316, as well as prior positions taken by the CMS Administrator and the PRRB.  The Final Decision also is not supported by substantial evidence in the record.

39.     The issue presented here—whether the Secretary's presumption of collectability policy existed prior to August 1, 1987—was decided in favor of the hospital-plaintiffs in *District Hospital Partners*.  The Secretary is collaterally estopped from relitigating these same issues against the same parties, as well as parties under common ownership.

### CAUSES OF ACTION

### COUNT I

### Judicial Review Under the APA and the Medicare Act
### (Decision is Contrary to Law)

40.     The Hospitals hereby incorporate by reference paragraphs 1 through 39 herein.

---

[7] In addition, the Final Decision is unlawful and must be reversed because the Secretary also cannot require a hospital to change its own practices and policies related to bad debts that were in place prior to August 1, 1987.  *See* 42 U.S.C. §1395f, note.  The Hospitals' policy since prior to August 1, 1987 has been to claim bad debts after reasonable collection efforts have been made, even if pending at an outside collection agency; thus, the presumption of collectability, as applied to the Hospitals specifically, is a violation of the Bad Debt Moratorium.

41.     Under 42 U.S.C. §1395oo(f), the PRRB's Final Decision upholding the disallowance of the Medicare bad debts at issue is a final agency action that is subject to judicial review under the APA.  Under the APA, the reviewing court shall set aside the final agency decision if, *inter alia*, it is contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record.  5 U.S.C. §706.

42.     The PRRB's Final Decision upholding the disallowance of the Hospitals' Medicare bad debts at issue on the ground that they were still pending at an outside collection agency at the time they were written off is contrary to law because (a) the Hospitals' bad debts are explicitly allowable under 42 U.S.C. §1395x(v)(1)(A), 42 C.F.R. §413.89, and other authorities, and (b) the Secretary's determination that the bad debts cannot be claimed as uncollectible on the ground that they were still pending at an outside collection agency at the time they were written off is contrary to law because it violates the Bad Debt Moratorium, as there was no such agency "policy" in effect prior to August 1, 1987.

43.     The PRRB's Final Decision upholding the disallowance of the Hospitals' Medicare bad debts at issue on the ground that they were still pending at an outside collection agency at the time they were written off is contrary to law because (a) the Hospitals' bad debts are explicitly allowable under 42 U.S.C. §1395x(v)(1)(A), 42 C.F.R. §413.89, and other authorities, and (b) the Secretary's determination that the bad debts cannot be claimed as uncollectible on the ground that they were still pending at an outside collection agency at the time they were written off is contrary to law because it is based on a policy that was not adopted by a notice-and-comment rule that applies during the FYs at issue as required by 42 U.S.C. §1395hh(a)(2) and *Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019).

21

44.     The PRRB's Final Decision upholding the disallowance of the Hospitals' Medicare bad debts at issue on the ground that they were still pending at an outside collection agency at the time they were written off is also contrary to law because (a) the Hospitals' bad debts are explicitly allowable under 42 U.S.C. §1395x(v)(1)(A), 42 C.F.R. §413.89, and other authorities, and (b) the Secretary's determination that the bad debts cannot be claimed as uncollectible on the ground that they were still pending at an outside collection agency at the time they were written off is contrary to law because it is based on a policy that was not published as required by 42 U.S.C. §1395hh(c)(1).

45.     The Final Decision is thus contrary to law and must be reversed and the Hospitals are entitled to payment in full for the Medicare bad debts at issue, plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2).

## COUNT II

### Judicial Review Under the APA and the Medicare Act
### (Decision is Contrary to Law)

46.     The Hospitals hereby incorporate by reference paragraphs 1 through 45 herein.

47.     Under 42 U.S.C. §1395oo(f), the PRRB's final decision upholding the disallowance of the Medicare bad debts at issue is a final agency action that is subject to judicial review under the APA.  Under the APA, the reviewing court shall set aside the final agency decision if, *inter alia*, it is contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record.  5 U.S.C. §706.

48.     The Secretary's determination that the bad debts at issue cannot be claimed as uncollectible on the ground that they were still pending at an outside collection agency at the time they were written off is contrary to law because this Court previously determined in *District Hospital Partners*, a case involving the same parties, that the Secretary's determination violated

22

the Bad Debt Moratorium as there was no such agency "policy" in effect prior to August 1, 1987. Thus, the Secretary is barred by issue preclusion from re-litigating the same issues against the same parties (*i.e.*, the twenty-five Hospitals that were also plaintiff-hospitals in *District Hospital Partners*), as well as the remaining Hospitals because they share common ownership.

49.     The Final Decision is thus contrary to law and must be reversed and the Hospitals are entitled to payment in full for the Medicare bad debts at issue, plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2).

## COUNT III

### Judicial Review Under the APA and the Medicare Act
### (Decision is Arbitrary and Capricious)

50.     The Hospitals hereby incorporate by reference paragraphs 1 through 49 herein.

51.     Under 42 U.S.C. §1395oo(f), the PRRB's Final Decision upholding the disallowance of the Medicare bad debts at issue is a final agency action that is subject to judicial review under the APA.  Under the APA, the reviewing court shall set aside the final agency decision if, *inter alia*, it is contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record.  5 U.S.C. §706.

52.     The Final Decision upholding the disallowance of the Medicare bad debts at issue on the ground that they were still pending at an outside collection agency at the time they were written off is arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record because, *inter alia*, the bad debts at issue were fully allowable and the disallowance is based solely on the applicable of a policy that could not be lawfully applied to the bad debts at issue.

53.     The Final Decision upholding the disallowance of the Medicare bad debts at issue also is arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in

the record because, the PRRB failed to explain or provide a valid rationale for its decision.  In particular, the PRRB declined to even consider the Hospitals' arguments regarding issue preclusion, instead finding that it did not have the authority to apply the doctrine.

54.    The PRRB's Final Decision is thus contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record pursuant to 5 U.S.C. §706, and other laws, and must be reversed.  The Hospitals are entitled to payment in full for the Medicare bad debts at issue, plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2).

## COUNT IV

## Mandamus

55.    The Hospitals hereby incorporate by reference paragraphs 1 through 54 herein.

56.    The Secretary has the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment.

57.    The Hospitals are entitled to a writ of mandamus under 28 U.S.C. §1361, directing the Secretary to allow the Hospitals' Medicare bad debts pending at outside collection agencies because (a) the Hospitals' bad debts are explicitly allowable under 42 U.S.C. §1395x(v)(1)(A), 42 C.F.R. §413.89, and other authorities, (b) the Secretary's determination that the bad debts cannot be claimed as uncollectible on the ground that they were still pending at an outside collection agency at the time they were written off is contrary to law because it violates the Bad Debt Moratorium, as there was no such agency "policy" in effect prior to August 1, 1987, and (c) the Hospitals are entitled to relief under *District Hospital Partners*.

58.    The Hospitals are entitled to payment in full for the Medicare bad debts at issue, plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2).

## REQUEST FOR RELIEF

WHEREFORE, the Hospitals request:

1.      An order reversing the Final Decision upholding the disallowance of the Hospitals' Medicare bad debts at issue.

2.      An order remanding this action to the Secretary with instructions to reimburse the Hospitals in full for bad debts at issue, plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2).

3.      Issuance of a writ of mandamus requiring the Secretary to reimburse the Hospitals in full for bad debts at issue, plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2).

4.      An order that the Court shall retain jurisdiction over this action for purposes of enforcement until notice, upon motion of the Hospitals, of the Secretary's compliance with this Court's orders, and the PRRB's compliance with all of the remand instructions of the Secretary;

5.      Legal fees and costs of suit incurred by Hospitals; and

6.      Such other and relief as the Court deems just and proper.

DATED:  December 28, 2020                    Respectfully submitted,


                                            By:        /s/ Arthur E. Peabody, Jr.
                                            Arthur E. Peabody, Jr. (D.C. Bar No. 386465)
                                            Robert L. Roth (D.C. Bar No. 441803)
                                            HOOPER, LUNDY & BOOKMAN, P.C.
                                            401 9th Street, N.W., Suite 550
                                            Washington, D.C. 20004
                                            Tel: (202) 580-7710
                                            Fax: (202) 580-7719
                                            E-mail: apeabody@health-law.com
                                            E-mail: rroth@health-law.com

                                            Alicia W. Macklin
                                            HOOPER, LUNDY & BOOKMAN, P.C.
                                            1875 Century Park East, Suite 1600
                                            Los Angeles, CA 90067
                                            Tel: (310) 551-8161
                                            Fax: (310) 551-8181
                                            E-mail: amacklin@health-law.com